**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **NATIONAL SHRINE OF THE HOLY SHROUD, INC.,**<br><br>    Plaintiff,<br><br>v.<br><br>**C. RICHARD ORAREO; MARC BORKAN; PATRICIA JOUBERT; RENEE JOUBERT RORRES, individually and as Power of Attorney for C. Richard Orareo; and OFFICE OF THE ATTORNEY GENERAL NON-PROFIT ORGANIZATIONS/ PUBLIC CHARITIES DIVISION,**<br><br>    Defendants. | **Civil Action No.** |

## COMPLAINT

This is an action by the charitable organization National Shrine of the Holy Shroud, Inc. (the "Charity") against its aging founder and former treasurer for the misappropriation of the Charities funds derived from the sale of real property it owned that for a time housed the National Shrine of the Holy Shroud.  The Charity seeks to recover the funds to properly distribute them to other charitable organizations devoted to the art and history of the Shroud of Turin, consistent with the founder's original and often stated intent.

## PARTIES

1.     The Plaintiff, National Shrine of the Holy Shroud, Inc. is a non-profit corporation organized under the laws of the Commonwealth of Massachusetts.

2.     The Defendant, C. Richard Orareo (the "Founder"), is an individual who, upon information and belief, currently resides in Naples, Florida.

1

3.    The Defendant, Patricia Joubert, is an individual who, upon information and belief, currently resides in Granger, Indiana.  She is the sister of the Founder.

4.    The Defendant, Renee Joubert Rorres, is an individual who, upon information and belief, currently resides in Oak Park, Illinois and is the niece of and holds power of attorney for the Founder.

5.    The Defendant, Marc Borkan, is an individual who, upon information and belief, resides in Charlottesville, Virginia.

6.    The Defendant, Office of the Attorney General, Non-Profit Organizations/Public Charities Division (the "Division") is an organ of the Commonwealth of Massachusetts with its primary office located in Boston.  The Division is named as a party herein pursuant to Mass. Gen. Laws, ch. 12, §§ 8, 8G.

## JURISDICTION AND VENUE

7.    Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331 as the claims include civil mail and/or wire fraud pursuant to 18 U.S.C. §§ 1341 and 1342.

8.    Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332 as the parties of citizens of different states and the amount in controversy exceeds $75,000.

9.    Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in Massachusetts.

## FACTS

10.    The Founder, Defendant Borkan and Diana Fulbright approved the Articles of Incorporation and By-Laws of the Charity on February 2, 2007.  The Charity intended to be governed by Section 501(c)(3) of the Internal Revenue Code of 1986.  Articles of Incorporation, Article 2. Its purpose was "presenting items pertaining to the Shroud of Turin and the Passion of

2

Jesus Christ in a prayerful and meditative setting conducive to enhancing appreciation of the Christian faith" and displaying "the largest [collection] outside Europe, inclu[ding] oil paintings, statutes, engravings, embroideries, posters prints, photographs, medals, stamps etc. as well as actual relics of the Shroud and the Passion of Christ including a museum and library (the "Collection"). Id.

11.     Article 9 of the Articles of Incorporation states, "No part of the assets or income of NSHS shall inure to the benefit of or be distributable to members, the Directors, the Officers or to other private persons."

12.     Article 12 of the Articles of Incorporation states in part as follows:

Upon the dissolution of NSHS, the Board of Directors shall, after paying or making provision for the payment of all of the liabilities of NSHS, dispose of all of the assets of the Corporation exclusively for the purpose of the Corporation, or to such organizations. . . operated exclusively for comparable charitable or educational purposes.

13.     At the time of the Charity's founding, the Founder resided at 114 The Fenway, Boston, Massachusetts, from which he curated the Collection.  His goal for the Charity was to purchase an appropriate location to house the Collection and display it to the public.

14.     In pursuit of that goal, the Founder donated substantial funds to the Charity himself and solicited other donors and obtained contributions from friends in the Boston area.

15.     The Board of Directors (the "Board") of the Charity initially consisted of the Founder as President, Defendant Borkan, as Treasurer, Diana Fulbright as Secretary/Clerk.  Joe Marino and William Meacham joined the Board in the 2010-2012 timeframe.

16.     The Board generally conducted meetings telephonically with the call initiating in Massachusetts.

17.     On or about July 30, 2012, the Charity used funds contributed by the Founder and the other donors to purchase real property located at 378 North State Road 15, Wabash, Indiana 46992 (the "Property").

18.     The Founder moved the Collection into the Property and operated it as a shrine, museum, and library.

19.     As a non-profit, the Charity paid no real estate tax on the Property.

20.     The Charity maintained a checking account at the First Merchants Bank in Wabash, Indiana (the "Bank").

21.     After several years of operation as a shrine, museum and library on the Property, the Charity determined that it did not draw the number of pilgrims expected and was not supported by the local church. Therefore, the Founder suggested, and the Board agreed, that he would donate or loan the Collection to another charity working in the area of the Shroud, and that the Charity would sell the Property.   The Founder solicited institutions in Massachusetts to house the Collection, but received no positive responses.

22.     The Founder's intention, set forth in an email to the Board on November 15, 2019, was that the proceeds from the sale of the Property would be deposited to the Charity's account, and that the Board "should consider investing the bulk of it, and begin developing a method of applying for grants and awarding the interest."

23.     On December 25, 2019, the Founder emailed the Board as follows:

> The check has been deposited into the Shroud Account.  Our next step is to decide what we will do with the funds.  We had discussed establishing a Foundation out of the 501 c 3 into a grant process for shroud related project and centers.  This will need a fully defined process of application and distributing small grants.

24.    After the sale of the Property and the loan of the Collection to the Museum of the Holy Shroud at the Cathedral of St. John Berchmans in Shreveport, Louisiana, the Founder's physical and cognitive health declined, amid signs of incipient dementia.

25.    Prior to the sale, the Board learned there were many deficiencies in the Charity's filings with the Internal Revenue Service, the Secretary of the Commonwealth, and the Defendant Non-Profitable Organizations/Public Charities Division of the Attorney General.

26.    During the period -2019 through early June 2022, the Founder worked with the Charity's accountant in Indiana to attempt to resolve the deficiencies. He informed the Board that he had sent the required forms to the Division to reestablish it in good standing in early June 2022, but the Board later learned that had not occurred.

27.    Mr. Borkan, as Treasurer, refused to authorize the Charity to expend funds to retain a lawyer to assist it in its attempts to resolve the issues with its federal tax filings.

28.    Stating that his "level of incompetence does not allow me to continue at any level. I NOW remove myself from any and all authority concerning the organization[,]" the Founder resigned on June 15, 2022. At that time he was showing signs of initial dementia.

29.    The remaining members of the Board were Mr. Meacham, Mr. Marino as Secretary, and Defendant Borkan a Treasurer.

30.    In January 2023, Mr. Meacham and Mr. Marino began the process to change the signature card on the Charity's bank account in Indiana to one of their names, but Mr. Borkan raised obstacles to doing so.

31.    Though the Board was scheduled to discuss the signing authority in a Zoom meeting on May 30, 2023, Defendant Borkan instead reported to Mr. Meacham and Mr. Marino

that the proceeds from the sale of the Property had been withdrawn from the Charity's bank account at some time in April or May 2023.

32.     According to Mr. Borkan, the Founder's family, had withdrawn the money and deposited it in the Founder's personal bank account as it was "his money". Mr. Borkan further reported that the funds had been comingled with the Founder's and were being used to pay for an assisted living facility, where his family members had moved him in March 2023.

33.     Upon information and belief, Ms. Joubert, Ms. Rorres, and/or Mr. Borkan sought to convert the Charity's funds to the Founder's personal funds in advance of the Board's intended actions to change the signatory on the Charity's account in the Bank.  Upon information and belief, one or all of them prevailed upon the Founder to execute a check, withdrawal slip or similar authorization to the Bank to close the account and issue a cashier's check to him personally.

34.     Upon information and belief, Ms. Joubert delivered that document signed by the Founder to withdraw the entire balance of the Charity's account to the Bank in April or May 2024 and accepted the cashier's check on his behalf.  The amount of the cashier's check was $263,857.03, and the bank account was closed.

35.     Upon information and belief, Ms. Rorres had power of attorney from the Founder to manage his personal bank accounts at that time.  Upon information and belief, Ms. Rorres transmitted the cashier's check through the mail or over wires to, upon information and belief, Huntingdon National Bank in Florida where the Founder maintained a personal account. Ms Rorres declined to have the Charity's funds set aside in a separate account and frozen.

36.     The Founder, Ms. Joubert, Ms. Rorres, and Mr. Borkan knew or should have known that the proceeds of the sale of the Property owned by the Charity became the property of the Charity.  The Founder's emails at the time of the sale of the Property indicate his clear intention

that the Charity should use the resulting proceeds to issue grants in furtherance of its charitable purpose.

37.    Upon information and belief, Ms. Joubert, Ms. Rorres, and/or Mr. Borkan intentionally induced the Founder to breach his duties to the Charity and convert its funds to his personal account in contravention of his own stated wishes for their personal financial gain.

38.    After learning about the conversion of the Charity's money to the Founder personally, Mr. Meacham filed a Complaint with the Division on June 14, 2023, requesting an investigation into the misappropriation of the Charity's funds by the Founder and/or Ms. Rorres.

39.    On June 21, 2023, Daniel F. Ferullo, an investigator in the Division, acknowledged receipt of the request, asked for contact information for Board members, and stated that the matter would undergo a review process.  Mr. Meacham never received further written communication from the Division regarding the results of the review, despite his multiple attempts to follow-up with various employees up the chain of command of the Division over the course of the following year.

40.    The Board has elected to dissolve the Charity in accordance with the laws and procedures of the Commonwealth of Massachusetts, to appoint Mr. Meacham as Acting President (Dissolution), and to bring this action to recover the misappropriated funds.

41.    While the Board has not determined which entities would receive the net funds recovered, candidates include six organizations across the country who conduct research regarding, promote knowledge of and interest in, and/or maintain collections of art and artifacts relating to the Shroud, consistent with the Founder's intentions.

## COUNT I
### (Conversion by the Founder, Ms. Joubert and Ms. Rorres)

42.    Plaintiff restates the allegations of the previous paragraphs as if fully set forth herein.

43.    The funds that were deposited in the Charity's bank account as a result of the sale of the Charity's Property in or about December 2019 were owned by the Charity.

44.    As the signatory on the Charity's bank account, the Founder dominion over the funds in the account but had no entitlement to use the funds for his personal purposes.  Article of Incorporation, Art. 9.

45.    Ms. Joubert and/or Ms. Rorres exercised undue influence over the Founder in encouraging and assisting him to convert the Charity's funds.

46.    By withdrawing the Charity's funds from its bank account, with the assistance of Ms. Joubert and depositing them in his personal bank account with the assistance of Ms. Rorres, the Defendants exercised dominion over funds to which they had no legal right.

47.    This conversion of funds damaged the Charity by preventing it from hiring an accountant and lawyer to navigate the complex process of dissolution, and from proposing to the appropriate court in Massachusetts the disbursement of those funds to other charities with similar goals.

## COUNT II
### (Breach of Fiduciary Duty by the Founder)

48.    Plaintiff restates the allegations of the previous paragraphs as if fully set forth herein.

49.    The Founder, as the former President of the Charity and the only registered signatory on its bank account owed fiduciary duties to it.

8

50.    Through the undue influence of Ms. Joubert and/or Ms. Rorres, the Founder breached his fiduciary duties by withdrawing funds from the Charity's bank account and putting those funds out of the Charity's reach.

51.    The Charity was damaged by its inability to effectuate the Founder's stated intention to distribute the funds to other groups to advance the goals of promoting interest and research in the Shroud.

## COUNT III
### (Mail and/or Wire Fraud by Ms. Joubert, Ms. Rorres, and Mr. Borkan)

52.    Plaintiff restates the allegations of the previous paragraphs as if fully set forth herein.

53.    Ms. Joubert, Ms. Rorres, and/or Mr. Borkan sought to defraud the Charity by inducing the Founder to convert the Charity's funds to his personal account.

54.    They executed the fraud by inducing the Founder to execute a document requesting a withdrawal of funds from the Charity's account at the First Merchants Bank of Wabash on a to be discovered date in April or May 2023 and then transmitting those funds to the Founder's personal bank account in Florida.

55.    Ms. Joubert (located in Indiana), Ms. Rorres (located in Illinois), and/or Mr. Borkan (located in Virginia) used the telephone wires or cellular service to communicate with each other regarding the implementation of the fraudulent scheme and used the mail and/or wire services to transfer the funds across state lines from Indiana to Florida.

56.    In doing so, the Defendants committed mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and/or 1343.

57.    The Charity was damaged by the fraud committed by the Defendants through the use of the mail and wires.

## COUNT IV
### (Aiding and Abetting Conversion and Breach of Fiduciary Duty by Ms. Rorres, Ms. Joubert, and Mr. Borkan)

58.    Plaintiff restates the allegations of the previous paragraphs as if fully set forth herein.

59.    The Founder started the Charity for the purpose of informing the public about the art, history, science, and religious importance of the Shroud of Turin.  See Articles of Incorporation, Art. 2.  Even after the failure of the Charity to establish a going concern at the Property, the Founder expressed his intention to the Board that the funds from the sale of the Property be used to further the purpose of educating the public about the Shroud.

60.    By exerting undue influence on the Founder to convert the funds he intentionally donated for the Charity's purpose to his own account, the Defendants provided material support to the Founder's actions to breach his fiduciary duties to the Charity and to convert its funds.

61.    The Charity was damaged by the actions of Ms. Joubert, Ms. Rorres, and/or Mr. Borkan to breach his fiduciary duty and unlawfully convert the Charity's funds.

## COUNT V
### (Breach of Fiduciary Duty by Mr. Borkan)

62.    Plaintiff restates the allegations of the previous paragraphs as if fully set forth herein.

63.    As the Treasurer of the Charity, Mr. Borkan owed it a duty of utmost good faith in his relationship with it.

10

64.    By failing to carry out the duties of a treasurer, particularly by refusing to allocate funds to take required steps to repair any documentary failures by the Charity, and by preventing the Charity from promptly appointing a new signatory on its bank account in Indiana following the Founder's resignation, Mr. Borkan breached his fiduciary duties to the Charity.

65.    Further, to the extent that Mr. Borkan informed Ms. Joubert and/or Ms. Rorres of the Board's intention to remove the Founder as the signatory on the Charity's account at the Bank, whether specifically telling or just implying to them to act quickly to remove the funds from that account, he disclosed confidential information to the detriment of the Charity, further breaching his fiduciary duty to the Charity.

66.    Further, after the conversion of the funds, he supported Ms. Jobert and Ms. Rorres' positions that the funds were owned by the Founder rather than the Charity, despite the Founder's expressions of his intent prior to his worsening dementia.

67.    The Charity was damaged by Mr. Borkan's breaches of fiduciary duty as they allowed the conditions to exist which made the conversion of funds possible.

**WHEREFORE,** Plaintiff, National Shine of the Holy Shroud, respectfully requests that the Court find in favor of the Charity with respect to its claims and award damages in the amount proven at trial, impose a constructive trust on any funds of the Charity that can be traced, award the Charity its attorney's fees incurred in litigating this matter, and grant such other relief as the Court deems necessary and appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted, Plaintiff,

Dated: May 29, 2026

NATIONAL SHRINE OF THE HOLY SHROUD, INC.,

By Its Attorneys,

*/s/ Gilbert Schipani*

Mary Theresa Moran, Esq. BBO # 562527
Gilbert J. Schipani, Esq. BBO #675566
TEMPUS FUGIT LAW, LLC
185 Devonshire Street, Suite 201
Boston, MA 02110
Tel: (617) 752-2371
tracy@tflawllc.com
gil@tflawllc.com

12